# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| UNITED STATES OF AMERICA | ) | CR. No.: 2:18-cr-00254-MBS |
|---|---|---|
| vs. | ) | |
| | ) | **ORDER AND OPINION** |
| DAVON GILLIANS | ) | |
| | ) | |

## I. INTRODUCTION

Davon Gillians ("Defendant") is the sole individual named in a one-count Indictment filed on March 13, 2018. ECF No.1. Count One charges Defendant with knowingly possessing a firearm and ammunition after committing a crime punishable by imprisonment exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e). Id. The discovery of the firearm that serves as the basis for the Indictment stems from a traffic stop and subsequent search of a vehicle in which Defendant was traveling.

On September 28, 2018, Defendant filed a motion to suppress "the fruits of the stop, search, and seizure which resulted in the indictment in this case."[1] ECF No. 47 at 1. In his motion, Defendant argues that the underlying traffic stop in this case was invalid, as no traffic violation occurred, and as such, there was no reason to stop the vehicle in which Defendant was traveling. Id. at 3. Thus, Defendant asserts that because the officer in this matter had no reasonable suspicion or probable cause to stop Defendant, the firearm in question should never have been seized.

---

[1] Defendant only challenges the stop in this case. Defendant does not challenge the validity of the subsequent search and seizure.

1

The government filed a response on October 15, 2018. ECF No. 50. In response, the government contends that: 1) there was a traffic violation and the stop was justified; 2) even if the officer was mistaken about the violation, suppression is not the appropriate remedy; 3) the pat-down of Defendant was warranted based on the presence of drugs and the officers' prior knowledge of Defendant's criminal history; and 4) the officers had probable cause to search the vehicle based on a strong odor of marijuana emanating from it. Id. at 1.

## II. EVIDENTIARY HEARING

The court held an evidentiary hearing on October 25, 2018. Officer Tommy Plyler ("Officer Plyler"), the officer who pulled over the vehicle in which Defendant was traveling, and the driver of the vehicle, M.W., a minor, testified.

### A. Officer Plyler's testimony

Officer Plyler testified that on January 5, 2018, he was on patrol at the intersection of Chuck Dawley Boulevard and Bowman Road in Mount Pleasant, South Carolina. Trial Tr. 10,5. Officer Plyler further testified that he was on patrol in response to a slew of break-ins occurring in that area. Id. at. 15-23. At approximately 5:20 PM, Officer Plyler observed a Dodge Avenger driving towards him. Id. at 15. Officer Plyler testified that he was not able to see who was driving the Dodge.[2] Trial Tr. 22, 12-15. Officer Plyler pulled behind the Dodge to run its license plate to see if the plate was suspended or stolen. Trial Tr. 16, 23-25. At the time that Officer Plyler approached the Dodge in his cruiser, the Dodge "made an abrupt right turn" into a

---

[2] The Assistant United States Attorney's brief asserted that Officer Plyer could identify who was in the vehicle, specifically stating that "[f]rom Officer Plyer's vantage point in his marked patrol vehicle, he could see a female was driving, accompanied by a second female in the front passenger seat." ECF No. 50 at 1-2." When questioned about this inconsistency at the evidentiary hearing, the Assistant United States Attorney stated that he "noticed [the inconsistency] after [he] filed it. . . ." ECF No. 55 at P. 13-17. However, an amended pleading was not filed. The court will therefore rely the sworn testimony of the officer.

2

business park. Trial Tr. 17, 1-3. Officer Plyler therefore did not have the opportunity to immediately run the license plate. Id. at 24-25. Officer Plyler testified that because of a recent ice storm in the area, the business park was closed. Trial Tr. 18, 17-21. Officer Plyler also noted that many of the businesses in the park were for sale, so the park was typically empty. Id. at 21-24. Officer Plyler testified that at that point, his "reasonable suspicion grew" because there was "no reason for that car to be going into [that] parking lot." Id. at 24-25; Trial Tr. 19, 1-2. Officer Plyler elaborated that he had witnessed people "avoid [his] police car in the past" and that he had a "gut feeling" the Dodge was trying to avoid him in this instance. Trial Tr. 21, 4-7. After the Dodge turned into the business park, Officer Plyler continued driving, and turned around to wait for the car to exit the business park. Id. at 18. The Dodge exited the business park after ten to fifteen seconds. Id. at 21-22. Officer Plyler followed the vehicle, and observed it 1) fail to utilize its turn signal to move from the travel lane to the median and 2) fail to signal for 100 feet prior to turning into a gas station. Trial Tr. 23, 13-20. The officer commenced a traffic stop at the gas station, citing the 100 foot lane change violation as the reason for the stop. Trial Tr. 24, 16-17. Officer Plyler testified that he committed to the traffic stop "when [he] observed the violations." Trial Tr. 33, 19-20.

### B. M.W.'s testimony

M.W. testified that she was she was driving to the Blue Water gas station in Mount Pleasant, South Carolina. Trial Tr. 85, 11. M.W. stated that the purpose for her visit to the gas station was to "get some Sprite for [Defendant's] little sister." Id. at 13. M.W. was driving, and had 3 other people in her car – including Defendant. Id. at 9. M.W. noticed Officer Plyler's cruiser while she was stopped at a traffic light. Trial Tr. 86, 6-7. M.W. testified that she was in the left lane, and in order to turn into the gas station, she needed to be in the right lane. Trial Tr.

87, 23-25. M.W. stated that she was not able to enter the right lane in time to turn into the gas station. Trial Tr. 88, 1-4. M.W. therefore had to turn into the business plaza in order to turn around and then enter the gas station. Id. at 4-5. M.W. specifically testified that she did not attempt to avoid Officer Plyler. Trial Tr. 89, 1-2. After entering the parking lot of the business plaza, M.W. immediately exited the parking lot, stating that she used her turn signal. Id. at 12-17. Specifically, M.W. stated that she used her signal to enter the median, and then again to turn into the gas station. Id. M.W. testified that she used her signal for "at least 100 feet" before entering the gas station, but could not remember exactly. Trial Tr. 90, 14-15.

### III. DISCUSSION

The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. The Constitution also guarantees that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Id. It is therefore imperative that warrantless searches and subsequent seizures are evaluated through the most critical of lenses. It follows that it is the government's burden to prove by a preponderance of the evidence that a warrantless search was nonetheless valid. See generally United States v. Matlock, 415 U.S. 164 (1974); see also Lego v. Twomey, 404 U.S. 477, 489 (1972).

Officers "may effectuate a traffic stop based on probable cause or reasonable suspicion of a violation of the law." United States v. Mobley, C/A No. 3:14cr122, 2014 WL6791425 at *4 (E.D. Va. Nov. 25, 2014)(quoting United States v. Williams, 740 F.3d 308, 312 (4th Cir. 2014)). Traffic stops must not be pretextual; that is, law enforcement officers cannot go on fishing expeditions in order to uncover suspected illegal activity in automobiles. Whren v. United States,

517 U.S. 806, 819 (1996)("Here the District Court found that the officers had probable cause to believe that petitioners had violated the traffic code. That rendered the stop reasonable under the Fourth Amendment. . . ."). The Court of Appeals for the Fourth Circuit detailed its own standard for traffic stops in United States v. Hassan El, 5 F.3d 726 (4th Cir. 1993). There, the court found that an objective test applies. Id. at 730. Specifically, the court held that "if an officer has probable cause or a reasonable suspicion to stop a vehicle, there is no intrusion upon the Fourth Amendment. . . [t]hat is so regardless of the fact that the officer would not have made the stop but for some hunch or inarticulable suspicion of other criminal activity." Id. at 729- 731; see also Carl Horn, III, Fourth Circuit Criminal Handbook §13 (2017).

When evidentiary hearings on motions to suppress present conflicting facts, it is the task of the court to evaluate the credibility of the dueling testimony. United States v. Abu Ali, 528 F. 3d 210, 232 (4th Cir. 2008)("[We] . . . defer to a district court's credibility determinations, for it is the role of the district court to observe witnesses and weigh their credibility during a pre-trial motion to suppress."); United States v. Biller, C/A No. A106CR14, 2006 WL 2623868 at *4 (4th Cir. Sept. 13, 2006)(quoting United States v. Barnard, 490 F.2d 907 (9th Cir. 1973)("Therefore, resolving conflicting testimony falls within the province of the fact finder."). Courts should "'credit the practical experience of officers who observe on a daily basis what transpires on the street.'" Mobley, 2014 WL6791425 at *4 (quoting United States v. Lender, 985 F.2d 151, 154 (4th Cir. 1993)). The court should consider consistency of testimony, if testimony aligns with records (like a police report), whether testimony would help the declarant, and whether the testimony was refuted by "stronger" evidence. Id. at *5.

The case at hand presents the court with a warrantless search stemming from a traffic stop. Officer Plyler contends that he had several reasons to stop M.W.'s car. Officer Plyler

5

asserts that he witnessed suspicious activity, and also asserts that he witnessed two traffic violations. M.W. offers a conflicting account of what transpired. M.W. asserts that she was not avoiding Officer Plyler, and that she did not commit the traffic violations. The court must therefore make an initial credibility determination. Officer Plyler's account of the event is consistent. The information detailed in his police report matches his testimony. No stronger evidence exists to refute his testimony. The court therefore finds that Officer Plyler's testimony is more credible.

Having found Officer Plyler's testimony to be more credible, the court must now determine whether Officer Plyler had an objectively reasonable reason to stop M.W.'s vehicle. The court finds that Officer Plyler did have such a reason. Officer Plyler, an eleven year veteran of the Mount Pleasant Police Department, could have reasonably suspected that criminal activity was afoot when M.W. turned into the empty parking lot. The court is to consider the experience of officers, and Officer Plyler testified that he had previously witnessed individuals attempt to avoid his cruiser. According to Officer Plyler, M.W.'s actions were consistent with those previous attempts. Therefore, Officer Plyler had reasonable suspicion to stop M.W. Furthermore, because Officer Plyler's testimony is more credible than that of M.W., the court finds that Officer Plyler also had probable cause to stop M.W.'s vehicle after observing two traffic violations: 1) M.W.'s failure to signal before entering the median and 2) M.W.'s failure to signal for 100 feet before turning into the gas station. In conclusion, the court finds that Officer Plyler's actions did not infringe upon Defendant's Fourth Amendment rights.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to suppress is hereby **DENIED**.

**IT IS SO ORDERED.**

                                                                  /s/ Margaret B. Seymour
                                                                  Margaret B. Seymour
                                                                  Senior United States District Judge

Charleston, South Carolina

November 19, 2018